**In the Matter of Gary G. MARSHALL, Debtor.**

**Bankruptcy No. 2–82–01118.**

United States Bankruptcy Court, D. Connecticut.

Sept. 6, 1983.

Alan Robert Baker, Hebb & Gitlin, P.C., Hartford, Conn., for debtor.

John J. O'Neil, Jr., Hartford, Conn., trustee.

David L. Griffith, Nassau & Borowy, Newington, Conn., for First Nat. Bank of Boston.

MEMORANDUM AND ORDER RE: TRUSTEE'S APPLICATION FOR APPROVAL OF COMPROMISE

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

I.

The matter before the court is an application by John J. O'Neil, Jr., Esq., trustee of the above estate for approval of a compromise of a controversy over property claimed

by the debtor as exempt. First National Bank of Boston (First Bank), a creditor, objects to the granting of the application. Gary G. Marshall, the debtor, joined the trustee at the hearing in urging approval of the compromise.

## II.

The legal principles underlying the exercise of the court's discretion in approving an application to compromise are well established. Fed.R.Bank.P. 9019(a) provides that "[o]n motion by the trustee and after a hearing on notice to creditors . . . the court may approve a compromise or settlement." The frequently-cited case of *Drexel v. Loomis,* 35 F.2d 800 (8th Cir.1929), identifies the factors to be considered before a court concludes whether or not a compromise is in the best interest of an estate:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 806. *Accord Protective Committee For Independent Stockholders Of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). In addition, the Court of Appeals in this circuit has recently admonished that in undertaking an examination of a compromise the

responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by [objectors] but rather to canvass the issues and see whether the settlement "fall[s] below the lowest point in the range of reasonableness." (citation omitted)

*In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir.1983).

## III.

Testimony from the trustee, the debtor, documents introduced into evidence, and the case file establish the following background to the trustee's application. The debtor was formerly the president and general manager of a radio station, WDON, Inc., located in the Washington, D.C. metropolitan area. He was also a substantial shareholder in Horizons Communication, Inc. (Horizons), a holding company which owned all the issued stock of WDON. Prior to 1981, the debtor began researching the feasibility of making WDON a Spanish-language radio station. In the spring of 1981, First Bank filed involuntary bankruptcy petitions against WDON and Horizons in the United States Bankruptcy Court for the District of Maryland. On June 4, 1981, while these petitions were pending, the debtor, on behalf of WDON, signed an agreement to sell WDON's broadcasting assets for $700,000.00 to Lotus Communications Corp. (Lotus). The sale was conditioned upon approval by the Federal Communications Commission and the execution by the closing date of an employment agreement between the debtor and Lotus. The sales agreement stated that the agreement had been approved by the Maryland Bankruptcy Court. On June 17, 1981, Lotus and the debtor entered into an employment agreement under which Lotus agreed to hire the debtor for a term of fifty-five months following the sale as a general manager of the radio station at an annual salary of $30,000.00 (para. 3(a)) plus 10% of the operating profits of the station (para. 3(b)). In paragraph 3(c) of the employment agreement, Lotus agreed upon the closing of the sale of WDON to pay the debtor $20,000.00 as a "bonus" and a further sum of $180,-000.00 in fifty-four equal monthly installments of $3,333.33. The debtor acknowledged in paragraph 7 that the sale of WDON inured to his benefit as a stockholder of Horizons and that Lotus would train him in the business of Spanish-language broadcasting. In consideration of such, the debtor agreed that in the event his employment terminated for any reason he would not for a period of fifty-five months following the sale work for a Spanish-language station located within seventy-five miles of WDON. Paragraph 7 further provided that

should the debtor breach this covenant, Lotus would have no further obligations to continue the monthly installments described in paragraph 3(c). The employment agreement stated that the monthly installments would continue in the event of the debtor's death.

On the date of transfer of the WDON assets to Lotus, October 30, 1981, Lotus and the debtor executed an amendment to the employment agreement in which the parties eliminated the employment provisions of paragraphs 3(a) and 3(b), but reaffirmed the payment provisions of paragraph 3(c) and the noncompetition terms of paragraph 7. On or about the same date, the debtor agreed in writing to share the $20,000.00 bonus and the $3,333.33 monthly installments with the two remaining stockholders of Horizons, William Hildebrandt and Dr. Edward S. Magnus. Under this arrangement, the debtor would retain 51.9% of such proceeds, with Hildebrandt receiving 18.9% and Magnus 29.2%.

The debtor filed his chapter 7 petition in this district on November 24, 1982. In an amended claim of exempt property, in which he selected .the Connecticut exemptions, the debtor stated that a balance of approximately $145,000.00 due from Lotus under the employment agreement was exempt as either (1) not being property of the estate because these proceeds represent earnings for services to be performed by

him after commencement of the case; [1] (2) representing a personal service executory contract not capable of assumption by the trustee; [2] or (3) coming within the provisions of Conn.Gen.Stat. § 52–361 (1981). [3]

On April 14, 1983, the trustee timely objected to the claim of exempt property. First Bank filed a similar objection on April 19, 1983. On May 24, 1983, the trustee filed the present application for approval of a compromise, which, *inter alia,* proposes a settlement on the basis of the estate receiving one-third and the debtor retaining two-thirds of the Lotus contract proceeds. The application states that to fix the rights to the Lotus contract proceeds would require the determination of "novel issues of law, the resolution of which is extremely uncertain, would involve expenses and time-consuming litigation, and would not produce a result more favorable to the estate than that embodied in the compromise." The trustee urged approval of the compromise "to avoid such uncertain, protracted and costly litigation."

First Bank objects to the compromise. It claims that the employment contract is a disguised allocation of a purchase price and not a personal service contract, and that the proposed settlement will result in an unwarranted windfall to the debtor. First Bank further states that it will assume the expense of litigating the issues, and that the time required for full trial will not be

---

**1.** 11 U.S.C. § 541(a)(6) provides that a debtor's estate excludes "earnings from services performed by an individual debtor after the commencement of the case."

**2.** 11 U.S.C. § 365(c) states: "The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment; . . . ."

**3.** Conn.Gen.Stat. § 52–361 (1981) provides in relevant part that:

Whenever any person, firm or corporation brings an action against any person and seeks satisfaction of any claim or demand out of any debt accruing by reason of the personal services of such person . . . [t]he maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment to enforce payment of a judgment may not exceed the lesser of (A) twenty-five percent of his disposable earnings for that week, or (B) the amount by which his disposable earnings for that week exceed forty times the federal minimum hourly wage . . . .

lengthy. In its post-hearing brief, First Bank, with a claim of $601,294.03, alleged that it is the only unsecured creditor to file a proof of claim. Although this contention of First Bank is not accurate, a review of the court file discloses that First Bank represents over ninety percent of the claims filed as unsecured.[4]

### IV.

I conclude that the trustee's application should be denied. The legal issues, despite their novelty, do not appear to require an extended trial. First Bank is willing to cover the cost of litigation and a full trial will not deplete any other assets of the estate. Under the *Drexel* doctrine, the court should give "a proper deference" to the reasonable views of the creditors of the estate. Here, a creditor with a ninety percent interest in the results of this litigation has raised not unreasonable objections to the compromise. Under these circumstances, the objection of First Bank outweighs the recommendation of the trustee. *In re Wells,* 26 B.R. 150 (Bkrtcy.D.R.I.1983). (Trustee's request to compromise a claim denied when a creditor with a claim constituting eighty percent of allowed claims objected and agreed to assume cost of litigation).

The application for approval of compromise of amended trustee's objection to debtor's claim of exemption, filed on May 24, 1983, is hereby denied.

---

[4.] June 27, 1983 was the last day for filing proofs of claim.