### In the Matter of G.V. LEWELLYN & CO., INC., and Gary Vance Lewellyn, Debtors.

### Bankruptcy Nos. 82–162–C H, 82–766–C H.

United States Bankruptcy Court, S.D. Iowa.

May 14, 1992.

---

Paul R. Tyler, Trustee, G.V. Lewellyn & Co., Richard A. Malm, Des Moines, Iowa, for Trustee.

Julie Johnson McLean, William Graham, Des Moines, Iowa, for FDIC.

Theodore H. Focht, Steven Harbeck, Securities Investor Protection Corp., Washington, D.C., for Security Investor Protection Corp.

## ORDER ON JOINT MOTION TO APPORTION EXPENSES

RUSSELL J. HILL, Bankruptcy Judge.

On October 10, 1991 a telephonic hearing was held on the joint motion of the Securities Investor Protection Corporation (hereinafter SIPC) and Paul R. Tyler, trustee for the liquidation of G.V. Lewellyn & Co., Inc. (hereinafter Trustee), to apportion litigation expenses and the objection thereto by the Federal Deposit Insurance Corporation (hereinafter FDIC). Paul R. Tyler, Trustee, appeared and was represented by Richard A. Malm. Steven Harbeck represented SIPC; and Julie Johnson McLean and William W. Graham represented FDIC. Pursuant to 28 U.S.C. § 157(b), this Court has jurisdiction over this matter as a core proceeding. At the conclusion of the hearing the Court took the matter under advisement. Upon review of the parties' pleadings, briefs, and arguments, the Court now enters its findings and conclusions pursuant to Fed.R.Bankr.P. 7052.

## CONTESTED MATTER V. ADVERSARY PROCEEDING

■ Initially, the Court must consider the issue raised by FDIC: whether this matter must be brought by adversary pro-

ceeding rather than on motion as a contested matter.

The Trustee and SIPC proceed with this motion as a contested matter. FDIC objects arguing that Trustee and SIPC must bring the matter as an adversary proceeding. Specifically, FDIC argues the motion is a proceeding to recover money or property under Fed.R.Bankr.P. 7001(1) and to obtain a declaratory judgment relating to the recovery of expenses under Fed.R.Bankr.P. 7001(9). Rule 7001(7) might also apply in that the proceeding could be characterized as one to obtain "other equitable relief."

Fed.R.Bankr.P. 9014 provides:

In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion.... The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004, and, unless the court otherwise directs, the following rules shall apply: 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7062, 7064, 7069, and 7071. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply.

Essentially most of the tools available to parties in an adversary proceeding are available to parties to a contested matter either as specified in Rule 9014 or if requested pursuant to 9014. FDIC does not indicate what advantage might be had by treating this matter as an adversary proceeding. In light of the outcome and for the sake of efficiency, the Court will not require Movants to bring this as an adversary proceeding. No language in the Code or Rules appears to prohibit the Trustee and SIPC from bringing this motion as a contested matter concerning the administration of the estate, and FDIC fails to show any advantage to be derived by hearing the matter as an adversary proceeding. Therefore, this Court holds the Trustee and SIPC may proceed with their motion as a contested matter.

## FINDINGS OF FACT

1. On April 8, 1982, SIPC filed a complaint and application for the issuance of a protective decree for the customers of G.V. Lewellyn & Co. (hereinafter GVL) under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa–78*lll* (SIPA), in the United States District Court for the Southern District of Iowa, No. 82–220–B. Paul R. Taylor was appointed as Trustee for the liquidation of GVL pursuant to 15 U.S.C. § 78eee(b). On April 15, 1982, SIPC's application was granted and, pursuant to 15 U.S.C. § 78eee(b)(4), the liquidation proceeding was removed to the United States Bankruptcy Court for the Southern District of Iowa, and assigned the number 82–162–C. On May 24, 1982, Gary Vance Lewellyn (hereinafter Lewellyn), registered representative, president, and sole shareholder of GVL, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Iowa, which case was assigned the number 82–766–C. On October 29, 1982, the two cases were substantively consolidated. On April 2, 1982 First National Bank (hereinafter FNB) was declared insolvent and closed. The Federal Deposit Insurance Corporation (hereinafter FDIC) was appointed receiver for FNB.

2. The Trustee, as part of his investigation into the affairs of the Debtors, investigated the possibility of bringing a preference action against Swiss American Securities, Inc. (hereinafter SASI) to avoid a transfer of property of the estate having a value of not less than $2,000,000. The Trustee subsequently concluded, however, that a settlement whereby SASI would pay $80,000 to the Trustee in return for a release of all claims that could be brought by the Trustee on behalf of the Debtor's estate or by the Trustee on behalf of Debtor's customers or creditors, including any claim based upon rights in customer property as defined in 15 U.S.C. § 78*lll* (4), was in the best interests of the estate. Any recovery by the Trustee by reason of asserting a claim against SASI for avoidable preference under 11 U.S.C. § 547 would be assets allocated as customer property and would have been distributed to the holders of claims entitled to be paid from customer property.

On February 11, 1985, the Trustee filed a motion requesting the Court approve the settlement of a claim against SASI for payment to the trust estate of $80,000. In support of his motion, the Trustee stated that the litigation against SASI would be expensive, inconvenient, and would delay administration of the bankruptcy estate. He also stated that he did not believe he could establish the elements necessary to prevail in a preferential transfer claim against SASI. *In re Lewellyn,* Case nos. 82–162 & 82–766 op. at 1 & 5 (Bankr. S.D.Iowa Aug. 16, 1985) (order denying motion to approve settlement agreement) [hereinafter Order of August 16, 1985].

3. FDIC, major creditor of the bankruptcy estate, filed a resistance to Trustee's motion and requested a hearing. FDIC argued that a voidable preference having a value of not less than $2,000,000 could be established in favor of the Trustee and that Trustee's proposal to settle the claim for $80,000 was unfair, unreasonable, and not in the best interests of the estate. *Id.* at 5–6. No other party resisted the motion or objected to court approval of the settlement.

4. The FDIC, as receiver for FNB, is the holder of claims totalling $16,425,-820.52, which is approximately 90.8 percent of the "customer property" claims of the estate. "Customer property," as defined by 15 U.S.C. § 78*lll* (4), includes both customer property collected or recovered by the trustee and proceeds of customer property. Only two other creditors hold customer property claims: University Bank and Trust Company of Ames, Iowa—$1,000,000; and SIPC—$657,035.83. SIPC is also the holder of other claims including claims for cost and expenses of administration payable out of the assets of the general estate of the debtors pursuant to 15 U.S.C. § 78fff(e) and not from customer property. Any recovery the Trustee would have made from the preference action against SASI would have been allocated as customer property under 15 U.S.C. § 78*lll* (4). *In re Lewellyn,* Case nos. 82–162 & 82–766 (Bankr.S.D.Iowa March 20, 1985) (order approving allocation of assets). Only three customers would have been paid

from customer property: FDIC, University Bank and Trust Co. of Ames, and SIPC. (Order of August 16, 1985 at 6.)

5. At the April 25, 1985 hearing on Trustee's Motion for Court Approval of Agreement with Swiss American Securities, Inc., Bankruptcy Judge Stageman asked counsel for FDIC whether FDIC would be willing to indemnify the other creditors and finance the cost of the Trustee's preference action against SASI. Counsel for FDIC responded to the Court's inquiry by letter dated May 24, 1985. FDIC's letter provided:

> We have advised the Trustee that the General Counsel to the FDIC is willing to recommend to the Board that the FDIC provide and fund in advance legal assistance to the Trustee, subject to the supervision of the Court and the Trustee, and ultimately bear the expense of the legal assistance advanced by the FDIC in the event the preference litigation is unsuccessful.

Letter from William W. Graham to Judge Stageman (May 24, 1985).

6. Trustee's letter of May 31, 1985 responded to FDIC's proposal stating:

> Mr. Graham's letter is not responsive to the court's inquiry since it neither sets forth a concrete proposal nor makes an offer. The letter states that the General Counsel of the FDIC is "willing to recommend to the Board that the FDIC provide and fund in advance legal assistance to the Trustee." Apparently, no recommendation has been made to the Board and certainly the Board has not approved any proposal. In essence, the letter states no more than what Mr. Graham reported to the court at the April 25 hearing. The FDIC had a month to respond to the court's question and has not done so.
>
> .    .    .    .    .
>
> The letter states that the General Counsel is willing to recommend that the FDIC "ultimately bear the expense of the legal assistance advanced by the FDIC in the event the preference litigation is unsuccessful." Therefore, it appears the FDIC proposes only to pay the

expenses of legal assistance it provides. It is not offering to underwrite the Trustee's legal fees and expenses. The court asked Mr. Graham whether the FDIC would "underwrite" those fees to $120,000. According to Mr. Graham's letter, the answer to that question is no. The court asked whether the FDIC would put up $200,000. The FDIC is not willing to do so. The court asked whether the FDIC would be willing to put up $80,000 at interest. The FDIC is not willing to do that either. In short, it appears the FDIC is not willing to do anything the court has asked other than supply counsel to assist the Trustee, and even that proposal comes with strings attached.

Letter from Paul R. Tyler, Trustee, to Judge Stageman (May 31, 1985).

7. The Bankruptcy Court denied Trustee's settlement motion based on the Court's deference to FDIC's objection:

It is the potential recovery of the claim compared to the nominal amount of the settlement, and the fact that the FDIC will have by far the most to gain by a successful outcome of the litigation that control here.

Accordingly, the trustee's motion for court approval of a settlement agreement is denied. The trustee with or without the aide [sic] of the FDIC should undertake the subject matter litigation against Swiss American. The apportionment of litigation expenses between the FDIC and the estate shall be determined at the conclusion of the proposed litigation with consideration to be given to the offer of the FDIC to share the expenses thereof.

Order of August 16, 1985 op. at 8–9 (citations omitted).

The Bankruptcy Court's order also stated:

As for expense, the FDIC has offered to advance funds for the preference litigation, bear the litigation expenses, and indemnify the remaining creditors with customer property claims by their pro rata share of the proposed settlement if the pretence [sic] action is unsuccessful.

Order of August 16, 1985 op. at 8.

8. Trustee filed a motion for leave to appeal the Bankruptcy Court's August 16, 1985 order. Among the questions presented for the appeal was "[w]hether the court erred as a matter of law because it found as a finding of fact that the FDIC had offered to advance funds for the preference litigation, bear the litigation expenses, and idemnify [sic] the remaining creditors when in fact no such offer was made."

9. FDIC filed an answer in opposition to the Trustee's motion for leave to appeal. The answer did not address the issue of apportionment of expenses other than to note that the Bankruptcy Court deferred the issue to the conclusion of the litigation.

10. The District Court denied Trustee's motion for leave to appeal because the order at issue was not appealable as a final order or under the collateral order doctrine, and the Trustee had failed to show extraordinary circumstances or an abuse of discretion warranting appeal. *In re Lewellyn*, No. 85–830–B (S.D.Iowa Nov. 12, 1985) (ruling denying motion for leave to appeal).

11. On March 7, 1986 the Trustee filed a complaint and began to prosecute *Tyler v. Swiss American Securities*, Adv. No. 86–0050. While FDIC was granted its Notice of Appearance and Request for Copies, Order of May 20, 1986, FDIC did not assist or render aid to the Trustee in prosecution of the case. Nor at any time did the Trustee or SIPC request legal assistance from FDIC.

12. Trial of the preference action took place before Bankruptcy Judge Russell J. Hill on June 20 and 21, 1988 without any participation by the FDIC other than the testimony of Mr. Bruce A. Holmgren regarding the damages incurred by FDIC. On April 13, 1989 the Bankruptcy Court entered judgment in favor of SASI against the Trustee dismissing the complaint. Without the direction or participation of the FDIC, the Trustee appealed to the District Court, which affirmed the ruling of the Bankruptcy Court, and to the Court of

Appeals, which affirmed the ruling of the District Court.

## DISCUSSION

The Trustee and SIPC (hereinafter "Movants" when referred to jointly) jointly move that the Court apportion litigation expenses for the Trustee's preference action between FDIC and SIPC. Their argument is based in equity: Because FDIC was the sole creditor urging the court to disapprove a settlement in the matter and because FDIC stood to receive 91% of any recovery if the Trustee had successfully prosecuted the action, the Movants argue that FDIC should pay 91% of the Trustee's litigation expenses in the action.

FDIC resists the motion with arguments based on statutory and case law. First, argues FDIC, SIPC is statutorily obligated for any and all of the expenses of administration of a debtor's estate under the Security Investors Protection Act. 15 U.S.C. § 78fff–3(b)(2). Second, FDIC points out that no agreement was reached for FDIC payment of any administrative litigation expenses incurred in the preference action. Since no such agreement was ever reached, the Court may not now charge those expenses to FDIC.

The Court agrees with the FDIC and will deny the Movants' request for the reasons that follow.

## SIPA

Under the Securities Investor Protection Act (SIPA), all costs and expenses of the administration of the estate of the debtor and of the liquidation proceeding are to be borne by the general estate of the debtor. 15 U.S.C. § 78fff(e). However, to the extent that the general estate of the debtor is insufficient to pay any and all costs and expenses of the administration of the estate and of the liquidation proceeding, SIPC is required to advance to the Trustee the amount of such costs and expenses. 15 U.S.C. § 78fff–3(b)(2). The advances provided for in 15 U.S.C. § 78fff–3(b)(2) are not discretionary, but mandatory. *Compare with* 15 U.S.C. § 78fff–3(c) (discretionary advances). *See also In re Bell & Beckwith*, 93 B.R. 569, 578–79

(Bankr.N.D.Ohio 1988) ("Under 15 U.S.C. § 78fff–3(b)(2), SIPC will be required to advance the funds necessary to pay the administrative expenses attendant to the litigation.... [t]he cost of this litigation, if it were to go forward, would be borne by SIPC, and only SIPC."). Additionally, 15 U.S.C. § 78eee(b)(5)(E) specifically requires SIPC to pay reasonable compensation for services rendered by the trustee and counsel for the trustee when the general estate of the debtor is insufficient to pay such allowances.

Funds advanced by SIPC for such costs and expenses are to be reimbursed from the general estate of the debtor. 15 U.S.C. § 78fff(e). There is no statutory provision allowing SIPC to recoup such administrative costs and expenses advanced by SIPC to the Trustee from customers of the debtor or from customer property of the debtor. *Compare with* 15 U.S.C. §§ 78fff–3(a) (SIPC subrogated to claims of customers to extent it advances moneys to satisfy their claims) *and* 78fff–2(c) (allocation of customer property to repay SIPC for discretionary advances made under 15 U.S.C. § 78fff–3(c)).

Movants recognize SIPC has a statutory obligation to pay the costs and litigation expenses of the SASI preference action because the general estate assets have been exhausted. *See* Movant's Memorandum at 7 (citing 15 U.S.C. § 78fff–3(b)(2)). SIPC determined that the customers of G.V.L. & Co. were in need of the protections afforded by SIPA when it filed its Complaint on April 8, 1982 to liquidate the business of G.V.L. & Co. Two of the protections of a liquidations proceeding under SIPA are: (1) the prompt delivery and distribution of customer property to customers of the broker or dealers; and (2) the liquidation of the debtor's business. 15 U.S.C. § 78fff(a)(1) & (4). SIPA also established a "SIPC fund," which consists in large part of assessments imposed upon SIPC member brokers and dealers. 15 U.S.C. § 78ddd(c). All expenditures made by SIPC, including those for costs and expenses of the administration of a liquidation proceeding of one of its members who fails to comply with

SEC or other applicable requirements, is unable to meet its obligations to customers, or becomes insolvent, are to be made out of the SIPC fund. *See* 15 U.S.C. § 78ddd(a)(1).

Movants make no statutory argument in answer to FDIC's argument, but instead make an argument based on equity: that because the expenses were incurred directly as a result of FDIC's objection to the proposed settlement and because FDIC had the most to gain if the preference action were successful, therefore FDIC should be apportioned a share of the expenses in proportion to the benefit it might have received. In light of the fact that Congress has mandated that SIPC shall advance administrative costs and expenses to the extent the debtor cannot, the Trustee has a heavy burden in making an argument in equity contrary to what the statute provides.

## AGREEMENT

As set forth in the Findings of Fact, it is clear FDIC never reached agreement with the Trustee to pay any administrative litigation expenses incurred by the Trustee in the Swiss American preference action. Local counsel for the FDIC advised the Court and Trustee that

> the General Counsel for the FDIC is willing to recommend to the Board that the FDIC provide and fund in advance legal assistance to the Trustee, subject to the supervision of the Court and the Trustee, and ultimately bear the expense of the legal assistance advanced by the FDIC in the event the preference litigation is unsuccessful.

Letter of William W. Graham to Judge Stageman (May 24, 1985).

The Trustee expressly and unequivocally objected to FDIC's offer stating that "it neither sets forth a concrete proposal nor makes an offer." Letter of Paul R. Tyler, Trustee, to Judge Stageman (May 31, 1985). Moreover, the Trustee acknowledged that the FDIC proposal was merely to "bear the expense of the legal assistance advanced by the FDIC in the event the preference litigation is unsuccessful.

Therefore, it appears the FDIC proposes only to pay the expenses of legal assistance it provides. It is not offering to underwrite the Trustee's legal fees and expenses." *Id.* at 2. The Trustee further acknowledged that the FDIC is not willing to do anything "other than supply counsel to assist the Trustee, and even that proposal comes with strings attached." *Id.*

More importantly, the Trustee has affirmatively argued that the FDIC never made an offer to advance funds for the preference litigation and bear the litigation expenses. Trustee's Motion for Leave to Appeal at 3 (filed September 13, 1985).

In support of their motion to apportion litigation expenses, Movants cite *In re Marshall*, 33 B.R. 42 (Bankr.D.Conn.1983) and *In re Wells*, 26 B.R. 150 (Bankr.D.R.I. 1983). In *Marshall*, the trustee sought approval of a compromise involving property that the debtor claimed as exempt. The creditor, representing over 90 percent of the unsecured claims, objected to the proposed settlement, raising various factual and legal issues. *Id.* at 44–45. The court denied the proposed settlement, due in part to the fact that the objecting creditor expressly agreed to assume the expenses of litigating the claim prior to the court's denial of the compromise. *Id. Marshall* does not stand for the proposition that the court may properly charge an objecting creditor with litigation expenses even though the creditor did not agree to cover those expenses. *Marshall* is clearly distinguishable on its facts because, in the present case, the FDIC's proposal to advance certain litigation expenses was expressly and unequivocally objected to by the Trustee. Thus, no agreement existed as to the apportionment of administrative litigation costs incurred by the Trustee and SIPC in the Swiss American preference action.

Likewise, *Wells* does not support the Movants' assertion that the Court may, in its discretion, impose litigation expenses against an objecting creditor in the absence of an agreement by the creditor to assume those costs. *Wells*, like *Marshall*, concerned an explicit agreement by the objecting creditor to advance the cost to continue

a state court action involving the debtor's rights in real property. *Wells*, 26 B.R. at 152. In the present case, the Trustee rejected the FDIC's proposal concerning the advance of certain expenses. In fact, according to the Trustee, the FDIC did not even make an offer. Letter of Paul R. Tyler to Judge Stageman (May 31, 1985) and Trustee's Motion for Leave to Appeal filed September 13, 1985. Thus, Movants' reliance on *Marshall* and *Wells* is misplaced.

For the same reason, Trustee's citation to *In re John H. Woodbury Dermatological Inst.*, 191 F. 819 (2d Cir.1911), does not provide the Court with any authority in this matter. In *Woodbury*, the Court merely stated that, if the stockholders put up security or guaranteed the costs of litigation, then the suit could go forward. *Id.* at 820. The case is not authority for Trustee's position that, in the absence of any agreement prior to the continuation of the action, the court may apportion, after the fact, the costs and expenses of the litigation to the objecting party.

Notwithstanding the movants' equitable arguments, Congress has already provided for the allocation of the burden of administrative expenses of the estate of Lewellyn and G.V.L. & Co. and of this liquidation proceeding. When the general estate of the Debtor is insufficient to pay such costs and expenses, SIPC is required to advance and ultimately bear the payment of such expenses, including reasonable compensation for services rendered by the Trustee and counsel for the Trustee specified by SIPC. Such services were rendered in connection with the liquidation proceeding and performed in furtherance of the Trustee's duties under SIPA. SIPA established a "SIPC fund" comprised of assessments imposed upon SIPC member brokers and dealers to fund the administration of a liquidation proceeding of one of their ex-members who embezzled customer monies and securities.

Finally, Movants argue that their proposed apportionment of the litigation expenses is "in accordance with Judge Stageman's order dated August 16, 1985." Mov-

ants' Memorandum at 8. Judge Stageman's order of August 16, 1985 directed the Trustee "with or without the aide [sic] of the FDIC," to undertake the preference litigation against Swiss American, and further stated that the "apportionment of litigation expenses between the FDIC and the estate shall be determined at the conclusion of the proposed litigation with consideration to be given to the offer of the FDIC to share the expenses thereof." Order of August 16, 1985 op. at 8–9. As stated in the Findings of Fact, the FDIC merely proposed to "provide and fund in advance legal assistance to the Trustee" and "ultimately bear the expense of the legal assistance advanced by the FDIC in the event the preference litigation is unsuccessful." The Trustee objected to FDIC's proposal; and during the course of the litigation and appeals, neither the Trustee nor SIPC requested such legal assistance from FDIC. Therefore, Judge Stageman's Order of August 16, 1985 is of no assistance to the Movants.

### ORDER

IT IS ACCORDINGLY ORDERED that the Trustee and SIPC's Joint Motion to Apportion Litigation Expenses is denied.